**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**LITTLE ROCK DIVISION**

JUL 2 7 2016

JAMES W. McCORMACK, CLERK
By:_____
DEP CLERK

VINCENT JOHNSON                                                    PLAINTIFF

VS.                    NO. 4,16 Cv S43-Suw

WELSPUN TUBULAR LLC,
WELSPUN PIPES, INC.,
and WELSPUN USA INC.        This case assigned to District Judge Wright        DEFENDANTS
                            and to Magistrate Judge _____ Harris _____

## COMPLAINT

1.     This is an action to remedy the discrimination of the Plaintiff, Vincent Johnson ("Johnson"), at Defendants, Welspun Tubular LLC, Welspun Pipes, Inc. and Welspun USA Inc. (collectively "Welspun"), at its Little Rock, Arkansas plant, in violation of his rights because of his race (African American), and in retaliation for a complaint he made to management. Plaintiff also contends he was constructively discharged.

2.     Plaintiff Johnson is entitled to relief for racial discriminatory acts by the Defendant herein under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and the Civil Rights Act of 1991, and 42 U.S.C. § 1981. Plaintiff also states a cause of action against the Defendant for violating the Arkansas Civil Rights Act and pendent state claims for slander.

3.     Section 703 of the Civil Rights of 1964 (Title VII), 29 U.S.C. § 20003-2(a)(1), provides that it is "an unlawful employment practice for an employer….to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex or national origin."

4.     42 U.S.C. § 1981 states that all persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

5.     Plaintiff also brings this action alleging violations of the American with Disabilities Act of 1990 ("ADA") and the Age Discrimination in Employment Act ("ADEA") of 1967, 29 U.S.C. § 621, as amended by 42 U.S.C. § 6101.

6.     Plaintiff also contends he was retaliated against in violation of the Whistleblower Protection Act of 1989, Pub.L. 101-12 as amended, and for participating in Arkansas Workers' Compensation.

## Jurisdiction

7.     The Court has jurisdiction of this action based upon 28 U.S.C. § 1343 (a)(3)-(4). Jurisdiction for this action is provided by 42 U.S.C. § 2000(e)-5, which allows for injunctive and other remedial relief, as well as damages for discrimination in employment.  Jurisdiction for this action is also provided by 42 U.S.C. § 1981.

## Parties

8.     The plaintiff is a 47-year-old African American citizen, residing in Little Rock, Pulaski County, Arkansas.

9.     Defendant, Welspun Tubular LLC, is believed to have been plaintiff's employer.

10.     Defendant, Welspun Tubular LLC, is a foreign Limited Liability Company, organized in the State of Delaware, qualified to do business in Arkansas. The agent for service for Welspun Tubular LLC is Rajesh Chokhani, 9301 Frazier Pike, Little Rock, AR 72206. At all

relevant times, Welspun Tubular LLC has been and is now doing business in the State of Arkansas, and has continuously had and does now have at least 80 employees.

11.     Welspun Tubular LLC (a subsidiary of WCL) was established to enhance its global enterprise's ability to serve its clients more efficiently in and around the North American market. Situated on a 740-acre site adjacent to the Little Rock Port in Arkansas, the facility was inaugurated on April 28, 2009 at a glittering ceremony attended by local, state and federal dignitaries, customers, and company.

12.     The facility employed at it inauguration 350 workers. Today, with the addition of a third shift, the facility boasts more than 400 workers and is one of the new large Arkansas manufacturers. The company recently announced the acquisition of a 44 acre site formerly owned by the Wheatland Tube Company for $4.25 million dollars. The purchase includes a 350,000 sq. ft. building on the site, which is currently being used to store stock material of Welspun's pipe and coating facility in Little Rock.

13.     The state of the art $150 million API-certified Little Rock facility is capable of producing 350,000 net tons of HSAW (spiral welded) pipes annually.

14.     With diversified sizes ranging from 24 to 60 inches as outer diameter (OD) and 0.23 to 0.98 inches as wall thickness (WT), as well as coating and double jointing capabilities, the Arkansas facility provides a one-stop solution to valued oil and gas customers in and around the United States.

15.     Welspun Pipes, Inc. and Welspun USA Inc. are made defendants because of some confusion regarding who was plaintiff's employer and for notice.

16.     Defendant, Welspun Pipes, Inc., is a foreign for profit corporation, organized in the State of Delaware, qualified to do business in Arkansas. The agent for service for Welspun Pipes,

Inc. is Rajesh Chokhani, 9301 Frazier Pike, Little Rock, AR 72206. At all relevant times, Welspun Pipes, Inc. has been and is now doing business in the State of Arkansas, and has continuously had and does now have at least 80 employees.

17.    Defendant, Welspun USA, Inc., is a foreign for profit corporation, organized in the State of Delaware, qualified to do business in Arkansas. The agent for service for Welspun USA Inc. is the Corporation Service Company, 300 Spring Building, Suite 900, 300 S. Spring Street, Little Rock, AR 72201. At all relevant times, Welspun USA Inc. has been and is now doing business in the State of Arkansas, and has continuously had and does now have at least 80 employees.

18.    This action is properly filed within the applicable statute of limitations; a copy of Plaintiff's Notice of Suit Rights is attached as Exhibit "A". Plaintiff has amended his original EEOC Charge to comply with EEOC regulations regarding facts occurring before and since the first EEOC Charge.

19.    Defendants are referred to collectively  herein as "Welspun".

20.    Plaintiff at all relevant times met all statutory requirements under 42 U.S.C. § 2000e et seq.

## Facts

21.    Plaintiff Johnson is a 47-year-old African American male.

22.    Plaintiff was hired by Defendant Welspun on September 15, 2013 as a taper but was assigned to coupling as his taping position was given to a younger white employee.

23.    Coupling is a harder and less desirable position than taping.

24.    White employees, temporaries, hired after plaintiff, were given taper positions while plaintiff remained as a coupler.

25.     Michael Cole is just one younger white employee given a taper position immediately after being hired while plaintiff was still in coupling.

26.     Whites are treated differently than blacks at Welspun regarding drug screening.

27.     Michael Cox, a Welspun employee, was told by management to go back home on a day drug screens were being given.

28.     A white male was hired by Welspun as a blast operator, although Welspun knew he tested positive for crystal methamphetamine.

29.     Welspun hired a white male who professed to be a Neo Nazi, a known racist organization.

30.     Welspun terminated a white supervisor nicknamed "Bull" for using the "N" word, only after Bull was known for using the "N" word for three years.

31.     On April 31, 2015, Plaintiff was assigned stripping pipe with a long bar with blades attached.

32.     Stripping pipe involves scraping off hot coating on the pipe with the blades as the pipe comes down the conveyor.

33.     Plaintiff had been instructed to reach over the rail, by his supervisor Chris Hoard, in violation of OSHA regulations.

34.     Just after midnight on May 1, 2015, plaintiff received an injury to finger.

35.     Welspun refused to report plaintiff's injury to his hand because of the safety violation to OSHA.

36.     Plaintiff's fiancé, Phyllis Robinson, reported plaintiff's injury and safety violation to OSHA on behalf of plaintiff.

37.     Plaintiff received a disciplinary point for being absent while he was at the emergency room with his hand injury.

38.     The plaintiff had a release from work by a workers' compensation physician from May 1, 2015 to July 8, 2015.

39.     During plaintiff's workers' compensation release, Welspun gave plaintiff eight or nine disciplinary points for being absent.

40.     After plaintiff returned to work, Welspun continued to give him disciplinary points while he was seeking medical attention.

41.     Martin Cain, plaintiff's supervisor, advised plaintiff to take pain medication, Oxicodone, at work, creating danger to plaintiff and knowing plaintiff would have to drive home.

42.     Martin Cain told the workers' compensation adjuster, Sharon Conway, plaintiff was leaving work, unexcused, when in fact plaintiff was making visits to his doctor.

43.     Because of Martin Cain's false report to Sharon Conway, the workers' compensation commission stopped plaintiff's benefits, forcing plaintiff to settle his workers' compensation claim for approximately one-half its value.

44.     Because plaintiff injured his hand at work he had to take FMLA leave as a reasonable accommodation.

45.     Plaintiff still has problems with his hand, although settling his workers' compensation claim for approximately one-half of his claim's value.

46.     As a result of plaintiff's workers' compensation injury, plaintiff was viewed by Welspun as having a disability.

47.     During the summer of 2015, plaintiff complained about race discrimination, among other things.

48.     Plaintiff has applied numerous times for operator and assistant operator positions which pay more money and are physically easier on your hands.

49.     Plaintiff told Welspun he wanted the operator and assistant operator positions due to his hand.

50.     Plaintiff has 30 years of relevant experience.

51.     Again and again, Welspun has promoted people into operator and assistant operator positions who have less seniority, skill and experience than plaintiff, and who plaintiff has trained.

52.     Plaintiff's hand swells at times because of his job.

53.     The persons who receive the operator and assistant operator positions are either younger, white, or have not complained of discrimination or made reports to OSHA.

54.     Plaintiff has been disciplined for taking FMLA leave; plaintiff's complaints have been ignored.

55.     Plaintiff was moved to a different plant with the same job title, but had to take a cut in pay.

56.     Plaintiff was denied help with his job when other white employees received help.

57.     People plaintiff trained, who are white, or who have not complained of discrimination, stayed at the other plant with higher pay.

58.     Plaintiff was discriminated against based on his race, his disability or viewed disability, and in retaliation for requesting an accommodation, complaining of discrimination and complaining to OSHA.

59.     Plaintiff suffered discrimination and retaliation in the denial of promotion, pay cut, transfer, discipline, denial of accommodation, and subjected to a hostile work environment.

60.     As a result of plaintiff's work environment described above and further below, plaintiff was constructively discharged on June 24, 2016.

61.     Plaintiff resigned his position at Welspun on June 24, 2016 for the reasons herein. On May 1, 2015, Plaintiff had his finger amputated due to a work related injury.

62.     During his light duty assignments, Martin Cain, plaintiff's supervisor, gave plaintiff job assignments that would violate his doctor's restrictions.

63.     During the time of his light duty assignments plaintiff was given points for being absent when he had doctor's appointments as well as hand therapy.

64.     Martin Cain called the Arkansas Workers Compensation Commission (Sharon Conway) and stated that plaintiff was leaving which caused Workers' Compensation to discontinue pay workers' compensation benefits to plaintiff.

65.     Plaintiff has written letters to David Deli, Katy (last name unknown), and Martin Cain complaining about these issues, but got no response.

66.     Plaintiff was called a nigger by Scott (last name unknown) and reported it to Katy and David Deli.

67.     Plaintiff told Katy the person's name was Scott.

68.     Katy told plaintiff she would do an email investigation.

69.     Plaintiff asked Katy for something in writing upon her finishing her investigation, but received nothing.

70.     Plaintiff even applied for other jobs that he was qualified for, yet white employees with less experienced than plaintiff received those jobs, evidence of further discrimination and retaliation for plaintiff's complaints about racial discrimination, his work related injury, complaint to OSHA, and participation in the FMLA.

71.     Plaintiff asked many supervisors to keep him informed when jobs were available, but received no reply.

72.     Plaintiff believes he was targeted in retaliation and received racial mistreatment with Martin Cain and Michelle (last name unknown) who told other employees not to talk to him during his light duty stay.

73.     Upon being released to regular duty, plaintiff still had problems with Martin Cain speaking on the radio to other employees about plaintiff's hand when plaintiff stated how swollen it was.

74.     Due to the mistreatment plaintiff received, both racially and in retaliation because OSHA was involved, plaintiff did not feel safe nor comfortable.

75.     In spite of plaintiff's complaints, none of these issues were addressed for a year, yet plaintiff continued to receive disciplinaries when he was on light duty.

76.     Martin Cain never turned plaintiff's statements in, so plaintiff was never paid his hours.

77.     Since these issue existed unanswered on for over a year, plaintiff had no choice but to resign on June 24, 2016 for his own wellbeing.

78.     Upon tendering his two weeks' notice, plaintiff was terminated immediately, further evidence of discrimination and retaliation.

WHEREFORE, Plaintiff prays the Court cause service to issue upon Defendant in this matter, and advance this case on the docket, order a speedy hearing, and on such hearing to this Court that it:

Enter a declaratory judgment declaring that the practices complained of herein are unlawful and violative of Title VII and 42 U.S.C. § 1981;

Grant a judgment against defendants as follows:

Award plaintiff compensatory damages in the amount of $500,000 and punitive damages in the amount of $500,000;

Award plaintiff his costs and disbursements incurred in bringing this action, including a reasonable attorney fee and prejudgment expenses and costs as provided by law; and

Grant such other and further relief as is equitable and just.

<u>JURY TRIAL DEMANDED</u>

Plaintiff requests a jury trial on all questions of fact raised by this Complaint.

Respectfully submitted,

LARRY J. STEELE PLC

By: _Larry J. Steele_

Larry J. Steele (78146)
115 Abbey Road
P.O. Box 561
Walnut Ridge, AR  72476-0561
(870) 886-5840
(870) 886-5873 fax
email:  steelelaw7622@sbcglobal.net
*Attorney for Plaintiff, Vincent Johnson*

10

EEOC Form 161 (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To: Vincent Johnson
7420 Anita Drive
Little Rock, AR 72209

From: Little Rock Area Office
820 Louisiana
Suite 200
Little Rock, AR 72201

[ ] On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 493-2016-00803 | Chris E. Stafford, Investigator | (501) 324-5812 |

THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

William A. Cash, Jr.,
Area Office Director

MAY 0 6 2016
(Date Mailed)

Enclosures(s)

cc:
James Swaim
HR Director
WELSPUN
9301 Frazier Pike
Little Rock, AR 72206

Sutter & Gillham, PLLC
PO Box 2012
Benton, AR 72018


EXHIBIT
A