## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

VINCENT JOHNSON                                                                                          PLAINTIFF

v.                                              No. 4:16CV00543 JLH

WELSPUN TUBULAR, LLC;
WELSPUN PIPES, INC.; and
WELSPUN USA, INC.                                                                                      DEFENDANTS

### OPINION AND ORDER

Vincent Johnson commenced this action against Welspun Tubular, LLC, Welspun Pipes, Inc., and Welspun USA, Inc. Johnson alleges the following: the defendants discriminated against him on the basis of his race, maintained a hostile work environment, and constructively discharged him in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 1981, and the Arkansas Civil Rights Act; the defendants violated the Americans with Disabilities Act, the Age Discrimination in Employment Act, and the Whistleblower Protection Act of 1989; the defendants retaliated against him for participating in Arkansas workers' compensation, for taking leave under the Family Medical Leave Act, and for complaining to the Occupational Safety and Health Administration; and the defendants slandered him. The defendants move to dismiss all of Johnson's claims except for the race discrimination and ADA claim under Federal Rules of Civil Procedure 12(b)(1), (6). On the two remaining claims, the defendants move the Court to require Johnson to provide a more definite statement pursuant to Federal Rule of Civil Procedure 12(e). For the following reasons, the defendants' motion is granted in part and denied in part. Document #12.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must

set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). The Court accepts as true all of the factual allegations contained in the complaint and draws all reasonable inferences in favor of the nonmoving party. *Gorog v. Best Buy Co., Inc.*, 760 F.3d 787, 792 (8th Cir. 2014). The complaint must contain more than labels, conclusions, or a formulaic recitation of the elements of a cause of action, which means that the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965.

The following statement of facts is taken from the complaint, the allegations of which the Court accepts as true for the purpose of ruling on the motion to dismiss.

Johnson is a 47-year-old African American man who worked at Welspun Tubular's facility in Little Rock, Arkansas. Document #4 at ¶¶ 8-11, 21-22. He began working for Welspun in September 2013, in a tapering position but was subsequently assigned to a coupling position, which Johnson describes as a less desirable position, and later a pipe stripping position. *Id.* at ¶¶ 22, 23, 31. Other employees who were either Caucasian or less senior than Johnson were assigned to tapering positions while Johnson remained in the coupling position. *Id.* at ¶ 24. Johnson describes various types of discrimination while working at Welspun. He says that Caucasians are not subjected to the same drug screening as African Americans. *Id.* at ¶¶ 26-28. Caucasians received help from Welspun when they requested it, but Johnson did not. *Id.* at ¶ 56. He also says that Welspun hired a professing Neo-Nazi and that although Welspun terminated a supervisor for using

2

the "N" word, it knew of his use of the word for three years before terminating him. *Id.* at ¶¶ 29-30. Johnson himself was called the "N" word by a Welspun employee, but after reporting it to Welspun's human resources department and requesting follow-up, he received none. *Id.* at ¶¶ 66-69.

Near the beginning of May 2015, while Johnson was working in the pipe stripping position, his supervisor gave him a dangerous instruction that violated OSHA regulations. *Id.* at ¶ 33. Johnson complied with the instruction, but he injured his hand in doing so. *Id.* at ¶ 34. The injury resulted in the amputation of one of Johnson's fingers. *Id.* at ¶ 61. Because Welspun would not report Johnson's injury to OSHA, Johnson's fiancé did. *Id.* at ¶¶ 35-36. Welspun punished Johnson with disciplinary points for being absent from work while he sought treatment for his injury and while he remained absent on workers' compensation release. *Id.* at ¶¶ 37-40.

Johnson's supervisor, Martin Cain, incorrectly told the workers' compensation adjuster assigned to Johnson's case that he was leaving work unexcused. *Id.* at ¶ 42. In fact, Johnson was leaving work for visits to his doctor. *Id.* This misstatement resulted in Johnson losing his workers' compensation benefits, which forced Johnson to settle his workers' compensation claim for approximately one-half its value. *Id.* at ¶ 43. Cain also asked Johnson to do unsafe things, such as to perform assignments that violated the restrictions Johnson's doctor ordered or to take pain medication while at work. *Id.* at ¶¶ 41, 62.

Johnson's injury required him to take leave under the FMLA. *Id.* at ¶ 44. Johnson claims that Welspun disciplined him for taking FMLA leave by moving him to a different plant that, though he had the same job title, resulted in a pay cut. *Id.* at ¶¶ 54-55. Johnson complained of race discrimination, but he remained at the other plant while Caucasians and those who did not complain of discrimination were kept in positions at the plant with higher pay. *Id.* at ¶¶ 47, 57.

After his injury, Johnson asked Welspun to assign him to an operator or assistant operator position, positions which pay more and which Johnson would be physically capable of handling. *Id.* at ¶ 48. Johnson felt well-qualified for these positions, having 30 years of relevant experience. *Id.* at ¶ 50. Nevertheless, Welspun did not promote Johnson to one of these positions but instead promoted less senior and less qualified individuals who were either younger than Johnson, Caucasian, or had not complained of discrimination or made OSHA reports. *Id.* at ¶ 51, 53. Johnson asked Welspun to provide him with accommodations due to persistent swelling in his hand. *Id.* at ¶¶ 52, 56. Welspun denied Johnson's requests even though Caucasians were granted similar requests. *Id.* at ¶ 56.

Due to these working conditions, Johnson resigned from his position at Welspun on June 24, 2016. *Id.* at ¶ 61. Although Johnson provided Welspun with two-weeks notice of his resignation, Welspun terminated him immediately. *Id.* at ¶ 78.

The defendants argue that Johnson's claims for hostile work environment, constructive discharge, FMLA retaliation, and slander fail to state a claim upon which relief can be granted. Johnson's complaint is not the model of clarity, but each of these claims are supported by sufficient factual allegations to survive the defendants' motion.

In support of the hostile work environment claim, Johnson alleges that he is a member of a protected class, both as an African-American and a disabled employee, that he was called the "N" word while employed at Welspun and subjected to an environment that tolerated the use of that word by a Welspun supervisor for three years, that a Welspun supervisor gave him dangerous instructions in violation of OSHA regulations, that Welspun punished him for seeking treatment for his injury, that after his injury, a Welspun supervisor told him to medicate himself while at work and

4

disregarded his doctor's orders, that Welspun refused to provide him with reasonable accommodations because of his race and disability, that Welspun demoted him and refused to promote him because of his race and disability, and that the discrimination caused him to resign his position. *See Singletary v. Mo. Dep't of Corr.*, 423 F.3d 886, 892 (8th Cir. 2005). With respect to the constructive discharge claim, Johnson alleges that he gave Welspun an opportunity to correct the above-mentioned conditions by complaining to Welspun management and human resources, but Welspun took no action. *See Alvarez v. Des Moines Bolt Supply, Inc.*, 626 F.3d 410, 418 (8th Cir. 2010). These allegations meet the pleading requirements of the Federal Rules of Civil Procedure.

Johnson has stated an actionable FMLA retaliation claim by alleging that Welspun moved him to a different plant and decreased his pay—an effective demotion—because he took FMLA leave. *See Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1051 (8th Cir. 2006). Likewise, Johnson has stated an actionable claim for slander (defamation) by alleging that Cain, a Welspun supervisor, lied to the workers' compensation adjuster about Johnson's reasons for missing work, causing him a decrease in his workers' compensation benefits. *See Faulkner v. Ark. Children's Hosp.*, 347 Ark. 941, 955-56, 69 S.W.3d 393, 402 (2002).

Johnson's claims under the ADEA, the Whistleblower Protection Act, the Arkansas Workers' Compensation Act, and OSHA, however, fail to state a claim upon which relief can be granted. Johnson did not exhaust his ADEA administrative remedies, which is a prerequisite for suit in federal court. *See Parisi v. Boeing Co.*, 400 F.3d 583, 585 (8th Cir. 2005). Johnson does not dispute that he has failed to exhaust his administrative remedies, and he concedes that his ADEA claim should be dismissed. Document #20 at 16. The Whistleblower Protection Act does not create a cause of action for nongovernmental employees nor even does it create a private right of action.

*See* 5 U.S.C. § 2302(b)(8); *Hastings v. F.A.A.*, 187 F.3d 938, 940 (8th Cir. 1999). Johnson is not a governmental employee and he is suing in his individual capacity. The Arkansas Supreme Court has held that Arkansas Code Annotated § 11-9-107 provides the exclusive remedy for discrimination, which includes retaliatory discharge, under the Arkansas Workers' Compensation Act. *Lambert v. LQ Mgmt., L.L.C.*, 2013 Ark. 114, *7-8, 426 S.W.3d 437, 440-41. That remedy is limited to either criminal penalties or administrative penalties. *Id.* Arkansas does not recognize a common-law claim for retaliation under its workers' compensation statute. *Id.* Last, Johnson's OSHA retaliation claim cannot proceed because the federal OSHA statute does not create a private right of action for wrongful discharge. *See Kohrt v. MidAmerican Energy Co.*, 364 F.3d 894, 901 (8th Cir. 2004). Moreover, Johnson's complaint does not provide a causal connection between his OSHA allegations and his decision to resign. *See Schweiss v. Chrysler Motors Corp.*, 987 F.2d 548, 549 (8th Cir. 1993).

The defendants have not moved to dismiss Johnson's claims for race and age discrimination. These claims remain. Likewise, Johnson's claims for hostile work environment, constructive discharge, FMLA retaliation, and slander are supported with sufficient factual allegations and they too remain. However, Johnson's claims under the ADEA, the Whistleblower Protection Act, the Arkansas Workers' Compensation Act, and OSHA are dismissed.

The defendants have also moved the Court to require Johnson to provide a more definite statement of his claims. *See* Fed. R. Civ. P. 12(e). The rule provides that a party may so move where "a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." *Id.* The motion "must point out the defects complained of and the details desired." *Id.* The defendants complain that "the myriad of claims,

6

which very well could be foreclosed of by various defenses, are impossible to fully defend against as currently pled." Document #13 at 12. That this order has pared the number of claims addresses the defendants' concern over a myriad of claims being impossible to defend against. The Court also disagrees that the Amended Complaint is "so vague or ambiguous" that the defendants cannot reasonably respond. The details for which the defendants ask involve dates of the complained of incidents. This is necessary, they say, so that they can determine if the statute of limitations applies. While it is true that specific dates are lacking, the incidents are bounded by Johnson's relatively short employment with Welspun. Johnson began working for Welspun in September 2013, and resigned in June 2016. The majority of the incidents he describes occurred after he was injured at the beginning of May 2015. The acts are described not as discrete incidents but rather as having a continuing and ongoing nature, which culminated in Johnson's resignation in June 2016. *See Tademe v. Saint Cloud State Univ.*, 328 F.3d 982, 987 (8th Cir. 2003). The defendants do not need precise dates to be alleged in the complaint to determine the applicability of the statute of limitations. The motion for a more definite statement is denied.

## CONCLUSION

For the foregoing reasons, the defendants motion is GRANTED in part and DENIED in part. Document #12.

IT IS SO ORDERED this 30th day of January, 2017.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE